1   Robert C. Niesley, Bar No. 131373
    rniesley@wthf.com
2   Kaysie Garcia, Bar No. 271329
    kgarcia@wthf.com
3   Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
    2040 Main Street, Suite 300
4   Irvine, CA 92614
    Telephone:  949-852-6700
5   Facsimile:   949-261-0771

6   Attorneys for Plaintiff
    Hudson Insurance Company
7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10          CV12-10939 PA(VBKx)

11  HUDSON INSURANCE COMPANY,     Case No.

12             Plaintiff,         **PLAINTIFF HUDSON INSURANCE
                                  COMPANY'S COMPLAINT FOR:**
13      v.
                                  **(1)  Breach of Contract (Indemnity
14  AMERICA WEST LANDSCAPE,            Agreement);**
    INC., a California corporation;
15  DUANE GROEN, an individual; ROY   **(2)  Statutory Indemnity;**
    ANTHONY, AKA ROY BRIBIESCA,
16  an individual; MARGUERITE         **(3)  Declaratory Relief;**
    GROEN, AKA MARGUERITE
17  NEWHOUSE, an individual;          **(4)  Quia Timet;**
    MICHELLE ANTHONY, AKA
18  MICHELLE NEWHOUSE, an             **(5)  Specific Performance.**
    individual,
19
               Defendants.
20

21      Plaintiff Hudson Insurance Company hereby alleges as follows:

22                **JURISDICTION AND VENUE**

23      1.      This Court has jurisdiction over this civil action.  These proceedings

24  are instituted to the provisions of 28 U.S.C. § 1332, in that this action is a civil

25  action between citizens of different states in which the matter in controversy

26  exceeds, exclusive of costs and interest, seventy-five thousand ($75,000.00) dollars.

27      2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

28  because the project that is the subject of this action took place in the County of

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

                                    COMPLAINT
                        CASE NO. _____

1   Orange, all of the contracts that are the subject of this action were to be performed
2   in the County of Orange, and all of the Defendants are subject to personal
3   jurisdiction in the Central District of California.

4                           **GENERAL ALLEGATIONS**

5          3.     Hudson is, and at all relevant times herein was, a corporation duly
6   organized and existing under the laws of the State of Delaware, with a principal
7   place of business in New York, New York.  "[T]he phrase 'principal place of
8   business' refers to the place where the corporation's high level officers direct,
9   control, and coordinate activities." <u>Hertz Corp. v. Friend</u>, 130 S. Ct. 1181, 1186
10  (2010).  Typically, the principal place of business or "nerve center" will be the
11  corporation's headquarters.  <u>Id</u>.  Based on the following facts, Hudson's principal
12  place of business, or its "nerve center," is in New York, New York:

13             a.     Hudson's headquarters are located in New York, New York.

14             b.     The New York office is the main administrative office for
15  Hudson and contains the substantial predominance of Hudson's corporate
16  operations.

17             c.     The New York office is where the majority of Hudson's
18  executive and administrative functions are performed.

19             d.     Hudson's New York office is the primary office of Hudson's
20  Chief Executive Officer and the primary location of Hudson's Management
21  Committee's regular meetings.

22             e.     All decisions regarding Hudson's business strategies,
23  management of corporate assets and finances, and corporate governance are made
24  in New York.

25         4.     At all relevant times, Hudson was duly licensed to conduct business in
26  the State of California.  Hudson is an admitted surety insurer in the State of
27  California, among other jurisdictions, and issues contract surety bonds, among
28  other bonds, and lines of insurance in the course of its business.

5.     Hudson is informed, believes and thereon alleges that Defendant America West Landscape, Inc. ("America West") is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles County, California.  Hudson is informed, believes and thereon alleges that at all times herein, America West was duly licensed to conduct business in the State of California.

6.     Hudson is informed, believes and thereon alleges that Defendant Duane Groen is an individual residing in the State of California and is subject to the jurisdiction and laws thereof.

7.     Hudson is informed, believes and thereon alleges that Defendant Roy Anthony, aka Roy Bribiesca, is an individual residing in Los Angeles County, California, and is subject to the jurisdiction and laws thereof.

8.     Hudson is informed, believes and thereon alleges that Defendant Marguerite Groen, aka Marguerite Newhouse, is an individual residing in San Bernardino County, California, and is subject to the jurisdiction and laws thereof.

9.     Hudson is informed, believes and thereon alleges that Defendant Michelle Anthony, aka Michelle Newhouse, is an individual residing in San Bernardino County, California, and is subject to the jurisdiction and laws thereof.

10.     Defendants America West, Duane Groen, Roy Anthony, aka Roy Bribiesca, Marguerite Groen, aka Marguerite Newhouse, and Michelle Anthony, aka Michelle Newhouse, shall hereafter be collectively referred to as either "Defendants" or "Indemnitors."

### THE GENERAL AGREEMENT OF INDEMNITY

11.     On or around June 6, 2012, Indemnitors executed a General Indemnity Agreement ("GIA") with Hudson.  Attached hereto as **Exhibit "A"** is a true and correct copy of the GIA.

12.     Under the terms of the GIA, the Indemnitors are jointly and severally obligated to indemnify Hudson from all loss and expense incurred in connection

1    with Hudson's issuance of any bonds on behalf of America West.

2          13.     Specifically, the GIA obligates Indemnitors to pay Hudson upon

3    demand,

4              All loss, costs and expenses of whatsoever kind of nature,

5             including but not limited to: court costs, and the cost of services

6             rendered by attorneys . . . , investigators, accountants, engineers,

7             or other consultants, and any other losses, costs or expenses

8             incurred by Hudson by reason of having executed any Bond, or

9             incurred by it on account of any Default under this Agreement

10            by any of the [Indemnitors] . . . .

11    <u>See</u> **Exhibit "A."**

12          **<u>LOARA H.S. SECURITY FENCE & LANDSCAPE PROJECT</u>**

13          14.    On or about July 13, 2012, Anaheim Union High School District

14    ("AUHSD") entered into a written contract ("Contract") with America West for

15    work described as Bid 2012-16 Loara H.S. Security Fence & Landscape

16    Improvements in Anaheim, California ("Project").

17          15.    Thereafter, and pursuant to the express requirements of its Contract

18    with AUHSD, America West approached Hudson to request that Hudson issue

19    surety bonds on behalf of America West in connection with the Project.

20          16.    Pursuant to the request of America West, and in reliance upon the

21    terms and execution of the GIA, Hudson issued Performance and Payment bond no.

22    AIS115 ("Bond") dated July 23, 2012, naming America West as principal and

23    AUHSD as Obligee, in the amount of $379,235.05.  Attached hereto as **Exhibit**

24    **"B"** is a true and correct copy of the Bond.

25                   **<u>AMERICA WEST'S DEFAULT</u>**

26          17.    The Notice to Proceed for the Project was issued to America West on

27    July 24, 2012.  The Contract included 106 consecutive calendar days for

28    completion of the Project, which resulted in the Project completion date of

1  November 7, 2012.

2    18. On or about October 9, 2012, AUHSD notified America West that

3  America West had failed to satisfy certain performance obligations pursuant to the

4  Contract, and required that such failures be cured within ten (10) days.

5    19. America West failed to cure the failures and, by letter dated October

6  24, 2012, AUHSD declared America West to be in default.  Subsequently, AUHSD

7  then made demand upon Hudson to complete the Project pursuant to its

8  performance obligations under the Bond.

9    20. On or about December 17, 2012, Hudson tendered a completion

10  contractor to repair and complete the remaining work required to be performed

11  under the Contract, pursuant to its performance obligations under the Bond.

12    21. As of December 21, 2012 and as a result of America West's default on

13  the Project, Hudson has paid no less than $45,000.00 to fulfill America West's

14  performance obligations under the Contract, and anticipates that it will pay no less

15  than $41,162.57 to satisfy at least six (6) claims on the Bond.

16    22. Additionally, as of December 21, 2012, Hudson has incurred no less

17  than $7,079.00 in attorneys' fees, costs and expenses as a result of America West's

18  default on the Project, and Indemnitors' failure to indemnify Hudson and post

19  collateral as required by the express terms of the GIA.

20    **INDEMNITY AND COLLATERAL DEMAND**

21    23. On or about November 19, 2012, Hudson caused to be sent to

22  Indemnitors a letter demanding, pursuant to the GIA, reimbursement of $2,420.00

23  in attorneys' fees, costs and expenses incurred as a result of Hudson's default on the

24  Project, and collateral security in the amount of $30,549.41 (the total of all claims

25  then received) to cover Hudson's anticipated losses on the Project.  A copy of the

26  November 19, 2012 letter is attached hereto as **Exhibit "C."**

27    24. When no response to the November 19, 2012 letter was received, on or

28  about December 11, 2012, Hudson caused to be sent to Indemnitors a second letter

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

demanding, pursuant to the GIA, reimbursement of $6,885.00 in attorneys' fees, costs and expenses incurred as a result of Hudson's default on the Project, and collateral security in the amount of $73,427.52 (the total of all claims then received) to cover Hudson's anticipated losses on the Project.  A copy of the December 11, 2012 letter is attached hereto as **Exhibit "D."**

25.    To date, Indemnitors have failed to respond to either the November 19, 2012 or December 11, 2012 letters, and have failed and refused, and continue to fail and refuse, to deposit collateral in any amount with Hudson and indemnify and hold Hudson harmless for its losses.

# FIRST CAUSE OF ACTION

## (Breach of Contract Against All Defendants)

26.    Hudson incorporates by reference Paragraphs 1 through 25 as though set forth herein in full.

27.    Due to America West's default on the Project, as well as the pending claims on the Bond, Hudson has incurred and will continue to incur costs, expenses and attorneys' fees in connection with its issuance of the Bond for the Project.

28.    Hudson has performed all of the terms, covenants and conditions required on its part to be performed under the terms of the GIA, or has been excused from doing so by the Indemnitors.

29.    Despite demand, Indemnitors have failed and refused to, and continue to fail and to refuse, to deposit collateral in any amount with Hudson and indemnify and hold Hudson harmless for its losses, in breach of the express terms of the GIA.

30.    As a direct and proximate result of the breach of the GIA by Indemnitors, Hudson has incurred losses and expenses, and will continue to incur losses and expenses in an amount according to proof, along with attorneys' fees, expenses and costs incurred in prosecuting this action.

///

///

## SECOND CAUSE OF ACTION

### (Statutory Indemnity Against America West Only)

31. Hudson incorporates by reference Paragraphs 1 through 31, inclusive, as though set forth herein in full.

32. California Civil Code section 2847 provides, "[i]f a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses . . . ."

33. As of December 21, 2012 and as a result of America West's default on the Project, Hudson has paid no less than $45,000.00 to fulfill America West's performance obligations under the Contract, and anticipates that it will pay no less than $41,162.57 to satisfy at least six (6) claims on the Bond.

34. Additionally, as of December 21, 2012, Hudson has incurred no less than $7,079.00 in attorneys' fees, costs and expenses as a result of America West's default on the Project, and Indemnitors' failure to indemnify Hudson and post collateral as required by the express terms of the GIA.

35. Thus, as a consequence of having issued the Bond on behalf of America West, America West became, and is now obligated to reimburse Hudson for any amount or amounts Hudson paid or will pay pursuant to the terms of the Bond and the Contract bonded by Hudson, including all necessary costs and expenses, in accordance with California Civil Code section 2847.

## THIRD CAUSE OF ACTION

### (Declaratory Relief Against All Defendants)

36. Hudson incorporates by reference Paragraphs 1 through 36, inclusive, as though set forth herein in full.

37. An actual controversy has arisen and now exists between Hudson and Indemnitors. Hudson contends that Indemnitors are obligated to reimburse Hudson for amounts Hudson will incur to satisfy America West's obligations as the

principal on the Bond.  Hudson also contends that Indemnitors are required to deposit collateral in an amount determined by Hudson sufficient to discharge any anticipated loss.

38.     Hudson desires a judicial determination of the respective rights and duties of Hudson and the Indemnitors with respect to the meaning and interpretation of the GIA.  In particular, Hudson desires a declaration that, under the terms of the GIA, Indemnitors are obligated to: (1) reimburse Hudson for amounts Hudson has incurred and will continue to incur to satisfy America West's obligations as the principal on the Bond, including attorneys' fees, costs and expenses; and (2) deposit collateral in an amount as determined by Hudson sufficient to discharge any loss or anticipated loss.

## FOURTH CAUSE OF ACTION

### (Quia Timet Against All Defendants)

39.     Hudson incorporates by reference Paragraphs 1 through 39, inclusive, as though set forth herein in full.

40.     Indemnitors are obligated under the doctrine of Quia Timet to reimburse Hudson for all losses and expenses that will be incurred by Hudson as a consequence of having issued the Bond.

41.     Hudson believes that, based upon their unwillingness to indemnify Hudson and their failure to deposit collateral, Indemnitors will attempt to avoid their obligation to reimburse Hudson for all losses and expenses that will be incurred by Hudson as a consequence of issuing the Bond.

42.     Hudson has no adequate remedy at law for the injuries suffered and the injuries it will continue to suffer.  Hudson is informed, believes and thereon alleges that Hudson have exhibited a willingness to evade their obligations and may transfer assets in derogation of the legal and equitable rights of Hudson. If Indemnitors are not enjoined immediately from transferring their assets, the assets may be disposed of permanently, and Indemnitors will render themselves insolvent,

1    thereby irreparably harming Hudson.

2        43.    As a proximate result of the conduct of Indemnitors, Hudson will be

3    damages so long as Indemnitors are able to evade their obligations to Hudson by

4    transferring their assets.  The full amount of this damage is not presently known by

5    Hudson, which will amend its complaint to state this amount when the same

6    becomes known to it, or on proof of the damages.

7                        **FIFTH CAUSE OF ACTION**

8                **(Specific Performance Against All Defendants)**

9        44.    Hudson incorporates by reference Paragraphs 1 through 44, inclusive,

10   as though set forth herein in full.

11       45.    Hudson issued the Bond on behalf of America West at the request of

12   Indemnitors.

13       46.    Hudson will incur losses and expenses by virtue of and as a direct

14   consequence of its issuance of the Bond and in satisfying America West's

15   obligations under the Bond.

16       47.    Hudson is entitled to judgment compelling Indemnitors to specifically

17   perform pursuant to the terms of the GIA by: (1) indemnifying Hudson for all of its

18   losses, expenses, costs and fees incurred, in connection with its issuance of the

19   Bond; and (2) depositing collateral with Hudson in an amount as determined by

20   Hudson sufficient to discharge any anticipated loss.

21       48.    Hudson's remedy at law is inadequate, in that Hudson is exposed to

22   liability that is not liquidated at this time.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 9 -

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hudson Insurance Company prays for judgment as follows:

ON THE FIRST CAUSE OF ACTION:

1.      For all damages proximately caused by Indemnitors' breach of the GIA;

2.      For an award of attorneys' fees expended to prosecute this action;

3.      For costs of suit herein; and

4.      For such other and further relief deemed necessary and proper by the Court.

ON THE SECOND CAUSE OF ACTION:

1.      For damages in an amount equal to the amount Hudson will incur to satisfy America West's obligations on the Bond;

2.      For costs of suit herein; and

3.      For such other and further relief deemed necessary and proper by the Court.

ON THE THIRD CAUSE OF ACTION:

1.      A judicial declaration regarding the applicability of, as well as the rights and obligations of the parties under, California Civil Code section 2847. Specifically, Hudson seeks a judicial declaration that America West is obligated to reimburse Hudson for amounts Hudson will incur to satisfy America West's obligations as the principal on the Bond;

2.      A judicial declaration that, under the terms of the GIA, Indemnitors are obligated to: (1) reimburse Hudson for amounts Hudson has incurred and will continue to incur to satisfy America West's obligations as the principal on the Bond; and (2) deposit collateral in an amount as determined by Hudson to be sufficient to discharge any loss or anticipated loss.

3.      For costs of suit herein; and

4.     For such other and further relief deemed necessary and proper by the Court.

ON THE FOURTH CAUSE OF ACTION:

1.     A temporary restraining order, preliminary and permanent injunction enjoining Indemnitors, their agents, servants, employees, officers and assigns, and each of them, from transferring any assets absent further court order;

2.     For costs of suit herein; and

3.     For such other and further relief deemed necessary and proper by the Court.

ON THE FIFTH CAUSE OF ACTION:

1.     For an order compelling Indemnitors to comply with the terms of the GIA by: (1) reimbursing Hudson for amounts Hudson will incur to satisfy America West's obligations as the principal on the Bond; and (2) depositing collateral in an amount as determined by Hudson, sufficient to discharge any anticipated loss.

2.     For all damages proximately caused by Indemnitors' breach of the GIA;

3.     For interest thereon at the legal rate;

4.     For reasonable attorneys' fees and costs incurred herein, according to proof;

5.     For costs of suit herein; and

6.     For such other and further relief as the Court may deem necessary and proper.

Dated:     December 26, 2012            Watt, Tieder, Hoffar & Fitzgerald, L.L.P.


                                        By: _Kaysie Garcia_____
                                           Robert C. Niesley
                                           Kaysie D. Garcia
                                           Attorneys for Plaintiff
                                           Hudson Insurance Company

IRVINE 182132.1 103544.00002

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

# EXHIBIT A



Hudson Insurance Company
17 State Street, 29th Floor
New York, NY 10004
PH: 212-978-2800
FAX: 212-344-2973

## GENERAL INDEMNITY AGREEMENT

s GENERAL INDEMNITY AGREEMENT, is made by the Undersigned in favor of Hudson Insurance Company ("HIC") for the purpose
ndemnifying HIC from all loss and expense in connection with any Bonds for which Hudson Insurance Company now is or
eafter becomes Surety for any of the following (hereinafter referred to as "Principal"):

ıerica West Landscape, Inc. _____

_____

_____

consideration of the execution of any such Bonds for the Principal and as an inducement to such execution by Surety, the
Jersigned, jointly and severally, agree as follows.

INITIONS:  Where they appear in this Agreement, the following terms shall have the meaning as provided herein:

ıd:  Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or
ıstitution thereof, whether with the same or different penalties, undertaken by Surety on behalf of or at the request of Principal,
ore or after the date of this Agreement.

ıtract:  Any agreement in which one or more of the Undersigned have an interest, including but not limited to, any agreement
ich is the subject of any Bond.

fault:  Principal shall be deemed to be in default under this Agreement in the event it:
1. Is declared to be in default by the obligee of any Bond;
2. Actually breaches or abandons any Contract;
3. Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the
   performance of any Contract;
4. Becomes the subject of any agreement or proceeding of bankruptcy, liquidation or receivership, or actually becomes
   insolvent;
5. Breaches, fails to perform, or comply with, any provision of this Agreement;
6. Makes any materially false or misleading statement with respect to any warranty, representation or statement contained in
   this Agreement or the declaration hereto or made or furnished to the Surety ( whether orally or in writing ) by or on behalf
   of the Undersigned in connection with this Agreement, any Bond or any claims thereunder; or
7. If an individual sole proprietor, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be
   immediately found by Surety by use of usual methods.

ncipal:  The persons or entities set forth above, their subsidiaries, affiliates, successors, executors, administrators, personal
iresentatives and assigns, now in existence or hereafter formed or acquired and/or any one of them or any combination thereof,
their successors in interest, whether alone or in joint ventures, partnerships, limited liability companies, or corporations with
iers named herein or not.

rety:  Any one or combination of the following: HIC, and any other person or company that procures a Bond for HIC or joins with
C in executing any Bond at their request, or provides reinsurance to them with respect to any Bond, and any subsidiaries,
cessors, and assigns thereof.

idersigned:  The Principal and all other persons or entities executing the Agreement, their successors, executors, administrators,
rsonal representatives and assigns.

DEMNITY TO SURETY:  Undersigned agree to pay to Surety upon demand:

1. All loss, costs and expenses of whatsoever kind of nature, including, but not limited to: court costs and the cost of services rendered by attorneys (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), investigators, accountants, engineers, or other consultants, and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this Agreement by any of the Undersigned, or by reason of the refusal to execute any bond. In addition, the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law, calculated from the date of each disbursement.

2. An amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefore. Such payment to be in the amount deemed necessary by the Surety to protect it from any loss, cost or expense. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss, cost or expense on any Bond. The Undersigned acknowledges that their failure to pay, immediately on demand by the Surety, constitutes a Default under this Agreement and entitles the Surety to injunctive relief for specific enforcement of the foregoing provision.

3. Any original, additional or renewal premium due for any Bond.

th respect to claims against the Surety:

1. Surety shall have the exclusive right for itself and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2. Surety may incur such expenses, including reasonable attorneys' fees, as well as investigative, accounting, engineering or other consultants' fees, as it deems necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has undertaken any Bond.

3. Surety's determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned.

4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

RETY'S REMEDIES IN EVENT OF DEFAULT:  In the event of Default, as defined above, Surety may, at its option and sole and solute discretion:

1. Take possession of the work under any and all Contracts and to arrange for its completion by others or by the obligee of any Bond;

2. Take possession of the Principal's or any of the Undersigned's equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Principal's office equipment, books and records, computer hardware and software, and utilize the same in completion of the work under the Contract without payment of any rental for such use;

3. Loan or guarantee a loan to Principal or any of the Undersigned of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Principal's obligations for labor, material, equipment, supplies and other charges, or discharging Surety's liability under any Bond, incurred in connection with any Contract;

4. Assert and prosecute any right or claim hereby assigned, transferred or conveyed in the name of the Principal and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances in its sole and absolute discretion subject only to the requirement that it act in good faith;

5. Take such other action as Surety deems necessary to fulfill its obligations under any Bond.

ndersigned waive all notice of such default, of the payment of any claim or of the making of any loan by Surety.  Should ndersigned learn of any claim or suit against Principal for which Surety may be held liable, Undersigned shall give prompt notice to irety of such claim or suit.

parate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit all not bar any subsequent action by Surety.

:URITY TO SURETY: As collateral security for the agreement of the Undersigned to repay all loss and expenses to Surety, the dersigned:

1. Assigns to Surety, as of the date of execution of any Bond, and grants a security interest to Surety in all rights of the Undersigned in, or in any manner growing out of:
    a. Any Contract or modification thereof;
    b. Any subcontractor purchase order and against any legal entity and its surety who has contracted with Principal to furnish labor, materials, equipment and supplies in connection with any Contract;
    c. Monies, Contract Balances due or to become due Principal on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
    d. Any and all rights, title, interest in, or use of any license, patent, copyright or trade secret which is or may be necessary for the completion of any bonded work;
    e. Any actions, causes of action, claims or demands and the proceeds therefrom whatsoever which Principal may have or acquire against any party to a Contract, or arising out of or in connection with any Contract, including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have full and exclusive right, in its name or in the name of the Principal , but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims and demands;
    f. All monies due or to become due to Principal on any policy of insurance relating to any claims arising out of the performance of any Contract or to policy refunds;
    g. All tools, material, supplies, plants, inventory, and equipment (whether completely manufactured or not), wherever located, which have been or hereafter may be purchased, used or acquired for use, entirely or partly, in connection with or to be incorporated into the matter that is the subject of any Contract; and
    h. All amounts that may be owing from time to time by Surety to Principal or any of the Undersigned in any capacity including, without limitation, any balance or share belonging to any of the Undersigned or any deposit or other account with Surety, which lien and security interest will be independent of any right of setoff which Surety may have.

   The Surety agrees to forbear exercising the rights granted to it in (a) through (h) above until there is a Default under this reement;

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Principal's Default to:
    a. Sign the name of any of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of the agreement;
    b. Dispose of performance of any Contract by subletting it in Principal's name or otherwise.
3. Authorize Surety to join any or all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Principal ;
4. Agree that all monies earned by Principal under any Contract are trust funds, whether in the possession of Principal or otherwise, for the benefit of, and for payment of Principal's obligations for, labor, material, and supplies furnished to Principal in performance of such Contract for which Surety would be liable under any Bond on such Contract, and the performance of Principal's or Surety's obligations to any obligee on such Contract;
5. Agree that this Agreement shall constitute a Security Agreement of the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, and may be used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, or under law, or in equity. A copy of or reproduction of this Agreement may be filed as a Financing Statement.

:NERAL PROVISIONS:

1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.
2. The Surety may decline to execute any bond ( including those for which any application was submitted, any bid or proposal bond was issued by the Surety, or otherwise) without impairing the validity of this Agreement, and the Undersigned hereby waive any and all claims against the Surety due to its refusal or failure to so execute.
3. The Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right to subrogation. The security interest, trust, and other rights granted herein will not be

deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which the Surety is entitled to under the law or in equity.

4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining, copying or reproducing them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the Undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

5. The Undersigned waive, to the extent permitted by law, so far as their respective obligations under this Agreement are concerned, all rights to claim any property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession of the United States.

6. The Undersigned will, on request of the Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such Bond or bonds, or make provisions acceptable to Surety for the funding of the obligation(s).

7. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

8. In the event that the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.

9. Execution by Principal or any of the Undersigned of any application for any bond or of any other agreement of indemnity on behalf of Principal, or the taking of indemnity of any other person by Surety with respect to any Bond of the Principal, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this Agreement.

10. The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

11. This Agreement may not be changed or modified orally.  No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

12. This Agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.

13. All parties agree that any scanned, electronically digitized or any microfilmed copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.

14. The Undersigned has relied upon its own due diligence in making its own independent appraisal of Principal and its business and financial condition, will continue to be responsible for making its own independent appraisal of such matters, and has not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the Undersigned indemnities of the financial condition or other affairs related to Principal.

15. The Undersigned shall remain responsible to Surety under this Agreement regardless of any changes in the relationship of the Undersigned with Principal.

16. The Undersigned further waive personal service of any and all process.

17. The Agreement may be terminated as to any Undersigned upon 30 days' written notice sent by registered or certified mail to the Surety at its principal office, The Hudson Insurance Company, Attention: Bond Department, 17 State Street, 29th floor, New York, NY, 10004, but such notice of termination shall not operate to modify, bar, or discharge the Undersigned as to the Bonds that may have been executed prior to such termination, and renewals and extensions thereof.  It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

18. The obligations of the Undersigned hereunder are joint and several.  Surety may bring separate suits hereunder against any or all of the Undersigned as causes of action may accrue hereunder.  Surety need not proceed first against the Principal or any of the Undersigned, or any third party, or exhaust or avail itself of any other legal remedy or of any collateral.

ch termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given tice as herein provided.

EXECUTED this  6th  day of  June , 2012

 WITNESS WHEREOF, the Indemnitors, intending to be legally bound hereby, have hereunder set their hands and affixed their als as of the  6th  day of  June , 2012.

TEST/WITNESS:

Corporation or Limited Liability Company
(Contractor and Indemnitor):

America West Landscape, Inc.

By: _____ (SEAL)

Name & Title: Duane Groen, President

Corporate Address:
15086 LaPalma Drive
Chino, CA 91710

orp. Tax ID #

TTEST/WITNESS:

Corporation or Limited Liability Company
(Contractor and Indemnitor):

_____

By:_____ (SEAL)

Name & Title:_____

Corporate Address:
_____
_____

orp. Tax ID #_____

 additional signatures required, use page with additional signature blanks and attach the signed copy to this agreement.

TNESS:

**Individual Indemnitor:**

Signature:

Name: Duane Groen _____, individually

Address:
16381 Bluegrass Lane
Chino Hills, CA 91709

Indemnitor's SS#: _____

TNESS:

**Individual Indemnitor:**

Signature:

Name: Roy Anthony _____, individually

Address:
2477 Limestone Ct.
Chino Hills, CA 91709

Indemnitor's SS#: _____

TNESS:

**Individual Indemnitor:**

Signature:

Name: Marguerite Groen _____, individually

Address:
16381 Bluegrass Lane
Chino Hills, CA 91709

Indemnitor's SS#: _____

TNESS:

**Individual Indemnitor:**

Signature: _____

Name: <u>Michelle Anthony</u>_____, Individually

Address:
<u>2477 Limestone Ct.</u>_____
<u>Chino Hills, CA 91709</u>_____

Indemnitor's SS#: _____

dditional signatures required, use page with additional signature blanks and attach the signed copy to this agreement.

## CORPORATE/LLC ACKNOWLEDGMENT(S)

ATE OF <u>CA</u>_____ )
                               ) ss:
UNTY OF _____ )

    On this _____ day of _____, _____, personally came before me,

uane Groen_____ of <u>America West Landscape, Inc.</u>_____,

own to me to be the person(s) who executed the foregoing and acknowledged that ___he___ had the authority to execute the
ne as the act of said corporation/company.

_____ (SEAL)
Notary Public

Commission Expires:

ATE OF _____ )
                               ) ss:
UNTY OF _____ )

    On this _____ day of _____, _____, personally came before me,

_____ of _____,

own to me to be the person(s) who executed the foregoing and acknowledged that ___he___ had the authority to execute the
ne as the act of said corporation/company.

_____ (SEAL)
Notary Public

Commission Expires:

dditional acknowledgements required, use page with additional acknowledgement blanks and attach the signed copy to this
reement.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of  San Bernardino                                                    }

On _____7/23/2012_____ before me, Michael Bribiesca Jr._____, Notary Public,
           Date                                    Insert Name of Notary exactly as it appears on the official seal

personally appeared  Duane Groen _____
                                     Name(s) of Signer(s)

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

**MICHAEL BRIBIESCA JR.**
Commission No. 1935859
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires MAY 9, 2015

Signature _____
                       Signature of Notary Public

Place Notary Seal Above

## ——— *OPTIONAL* ———

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the  form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner   ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner   ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

## PARTNERSHIP ACKNOWLEDGMENT(S)

TE OF _____ )

        ) ss:

JNTY OF _____ )

 On this _____ day of _____, _____, personally came before me,

_____ of _____,

ne known, and stated that ___he___ is (are) partner(s) in the firm of _____

_____ and acknowledged that ___he___ executed the foregoing instrument as the act of the said firm.

_____ (SEAL)

Commission Expires:            Notary Public

## PROPRIETORSHIP ACKNOWLEDGMENT

TE OF _____ )

        ) ss:

JNTY OF _____ )

 On this _____ day of _____, _____, personally came before me,

_____ Proprietor of _____,

ne known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that___he_____

:cuted the same.

_____ (SEAL)

Commission Expires:            Notary Public

## INDIVIDUAL ACKNOWLEDGMENT(S)

TE OF CA_____ )

        ) ss:

JNTY OF _____ )

 On this _____ day of _____, _____, personally came before me,

ane and Marguerite Groen_____, to me known, and known to me to be the individual(s) who executed the

:going instrument, and acknowledged that ____he____ executed the same.

_____ (SEAL)

Commission Expires:            Notary Public

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of  San Bernardino                                              }

On        7/23/2012        before me,  Michael Bribiesca Jr.                                    , Notary Public,
           Date                              Insert Name of Notary exactly as it appears on the official seal

personally appeared   Duane Groen

                                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____
                    Signature of Notary Public

**MICHAEL BRIBIESCA JR.**
Commission No. 1935859
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires MAY 9, 2015

Place Notary Seal Above

--- **OPTIONAL** ---

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____        Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer   itle(s): _____
☐ Partner  ☐ Li   General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of  San Bernadino                                              }

On _____7/23/2012_____ before me, _Michael Bribiesca Jr._____, Notary Public,
          Date                       Insert Name of Notary exactly as it appears on the official seat

personally appeared  Marguerite Groen _____
                                    Name(s) of Signer(s)

_____,

**MICHAEL BRIBIESCA JR.**
Commission No. 1935859
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires MAY 9, 2015

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____
               Signature of Notary Public

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the  form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____
Signer is Representing: _____
_____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____
Signer is Representing: _____
_____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

\TE OF _CA_____ )

                     ) ss:

UNTY OF _____ )

    On this _____ day of _____, _____, personally came before me,

y and Michelle Anthony_____, to me known, and known to me to be the individual(s) who executed the
egoing instrument, and acknowledged that ____he___ executed the same.

                                      _____ (SEAL)

Commission Expires:                          Notary Public

\TE OF _____ )

                     ) ss:

UNTY OF _____ )

    On this _____ day of _____, _____, personally came before me,

_____, to me known, and known to me to be the individual(s) who executed the
egoing instrument, and acknowledged that ____he___ executed the same.

                                      _____ (SEAL)

Commission Expires:                          Notary Public

\TE OF _____ )

                     ) ss:

UNTY OF _____ )

    On this _____ day of _____, _____, personally came before me,

_____, to me known, and known to me to be the individual(s) who executed the
egoing instrument, and acknowledged that ____he___ executed the same.

                                      _____ (SEAL)

Commission Expires:                          Notary Public

dditional acknowledgements required, use page with additional acknowledgement blanks and attach the signed copy to this
reement.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of  San Bernardino                                                    }

On _____7/23/2012_____ before me, Michael Bribiesca Jr. _____, Notary Public,
      Date                         Insert Name of Notary exactly as it appears on the official seal

personally appeared  Roy Anthony _____
                                     Name(s) of Signer(s)

_____,

**MICHAEL BRIBIESCA JR.**
Commission No. 1935859
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires MAY 9, 2015

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____
           Signature of Notary Public

Place Notary Seal Above

## ——— *OPTIONAL* ———

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer ——— Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____
_____

RIGHT THUMBPRINT OF SIGNER

Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer ——— Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____
_____

RIGHT THUMBPRINT OF SIGNER

Top of thumb here

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of  San Bernardino                                          }

On      7/23/2012      before me,  Michael Bribiesca Jr.                          , Notary Public,
      Date                        Insert Name of Notary exactly as it appears on the official seal

personally appeared   Michelle Anthony
                                   Name(s) of Signer(s)

**MICHAEL BRIBIESCA JR.**
Commission No. 1935859
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires MAY 9, 2015

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Place Notary Seal Above

Signature _____
               Signature of Notary Public

―――――――――――― **OPTIONAL** ――――――――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner      ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner      ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

# EXHIBIT B

PREMIUM INCLUDED IN THE PERFORMANCE BOND.

Issued in Three (3) Original Counterparts.

Bond No.    AIS115

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## Payment Bond

**CONTRACTOR:**
*(Name, legal status and address)*

America West Landscape, Inc.
15086 La Palma Drive
Chino, CA  91710

**SURETY:**
*(Name, legal status and principal place of business)*

Hudson Insurance Company
100 William Street, 5th Floor
New York, NY  10038
**Mailing Address for Notices**

100 William Street, 5th Floor
New York, NY  10038

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*

Anaheim Union High School District
501 N. Crescent Way
Anaheim, CA  92801

**CONSTRUCTION CONTRACT**
Date:    July 13, 2012

Amount: $379,235.05         Three Hundred Seventy Nine Thousand Two Hundred Thirty Five Dollars and 05/100

Description:
*(Name and location)*
Bid 2012-16 Loara HS Security Fence & Landscape Improvements

**BOND**
Date:    July 23, 2012
*(Not earlier than Construction Contract Date)*

Amount: $379,235.05         Three Hundred Seventy Nine Thousand Two Hundred Thirty Five Dollars and 05/100

Modifications to this Bond:      [X] None      [ ] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:                    *(Corporate Seal)*

America West Landscape, Inc.

Signature: _____

Name
and Title:   Roy Anthony
            Vice President

**SURETY**
Company:                    *(Corporate Seal)*

Hudson Insurance Company

Signature: _____

Name
and Title:   Sarah Myers
            Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Alliant Insurance Services, Inc.
701 B Street 6th Floor
San Diego, CA  92101
619-238-1828
S-2149/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,

   .1   have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

   .2   have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

## § 16 Definitions

§ 16.1 Claim. A written statement by the Claimant including at a minimum:

- .1 the name of the Claimant;
- .2 the name of the person for whom the labor was done, or materials or equipment furnished;
- .3 a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
- .4 a brief description of the labor, materials or equipment furnished;
- .5 the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
- .6 the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
- .7 the total amount of previous payments received by the Claimant; and
- .8 the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

§ 16.4 **Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 16.5 **Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

§ 17 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 18 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**                                         **SURETY**
Company:                          *(Corporate Seal)*               Company:                          *(Corporate Seal)*

Signature: _____                               Signature: _____
Name and Title:                                                   Name and Title:
Address                                                           Address

S-2149/AS 8/10

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of San Bernardino }

On _____7/24/2012_____ before me, Michael Bribiesca Jr. , Notary Public,
　　　　Date　　　　　　　　　　　Insert Name of Notary exactly as it appears on the official seal

personally appeared  Roy Anthony
　　　　　　　　　　　　　　　　　Name(s) of Signer(s)

_____,

**MICHAEL BRIBIESCA JR.**
Commission No. 1935859
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires MAY 9, 2015

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____
　　　　　　　　　　Signature of Notary Public

Place Notary Seal Above

---

## — OPTIONAL —

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing:
_____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA }

County of San Diego

On JUL 23 2012 before me, Jennifer L. Cox , Notary Public,

Date

Insert Name of Notary exactly as it appears on the official seal

personally appeared Sarah Myers

Name(s) of Signer(s)

JENNIFER L. COX
Commission # 1915197
Notary Public - California
San Diego County
My Comm. Expires Dec 4, 2014

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature *[signature]*

Signature of Notary Public    Jennifer L. Cox

Place Notary Seal Above

## — OPTIONAL —

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☑ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer is Representing: _____

RIGHT THUMBPRINT OF SIGNER

Top of thumb here

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer is Representing: _____

RIGHT THUMBPRINT OF SIGNER

Top of thumb here



No.  ALNT-10-0357

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:  That HUDSON INSURANCE COMPANY, a corporation of the State of Delaware, with offices at 17 State Street, New York, New York, 10004, has made, constituted and appointed, and by these presents, does make, constitute and appoint

**Lawrence F. McMahon, James Baldassare, Jr. and Sarah Myers,**
**each of the State of California**

its true and lawful Attorney(s)-in-Fact, at  New York, New York, each of them alone to have full power to act without the other or others, to make, execute and deliver on its behalf, as Surety, bonds and undertakings given for any and all purposes, also to execute and deliver on its behalf as aforesaid renewals, extensions, agreements, waivers, consents or stipulations relating to such bonds or undertakings provided, however, that no single bond or undertaking shall obligate said Company for any portion of the penal sum thereof in excess of the sum of Ten Million Dollars ($10,000,000.00).

Such bonds and undertakings when duly executed by said Attorney(s)-in-Fact, shall be binding upon said Company as fully and to the same extent as if signed by the President of said Company under its corporate seal attested by its Secretary.

In Witness Whereof, HUDSON INSURANCE COMPANY has caused these presents to be of its Executive Vice President thereunto duly authorized, on this 19th day of July, 2010 at New York, New York.

(Corporate seal)

HUDSON INSURANCE COMPANY

Attest...........................................
Peter H. Lovell
Corporate Secretary

SEAL
1918

By...........................................
Christopher T. Suarez
Executive Vice President

STATE OF NEW YORK
COUNTY OF NEW YORK.          SS.

On the 19th day of July, 2010 before me personally came Christopher T. Suarez to me known, who being by me duly sworn did depose and say that he is an Executive Vice President of HUDSON INSURANCE COMPANY, the corporation described herein and which executed the above instrument, that he knows the seal of said Corporation, that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said Corporation, and that he signed his name thereto by like order.

(Notarial Seal)

ALICIA T. McKINNEY
NOTARY PUBLIC
STATE OF NEW YORK
01MC6212495
QUALIFIED IN
NEW YORK COUNTY
COMMISSION EXPIRES

...........................................
ALICIA T. McKINNEY
Notary Public, State of New York
No. 01MC6212495
Qualified in New York County
Commission Expires October 13, 2013

## CERTIFICATION

STATE OF NEW YORK
COUNTY OF NEW YORK

The undersigned Peter H. Lovell hereby certifies:

That the original resolution, of which the following is a true and correct copy, was duly adopted by unanimous written consent of the Board of Directors of Hudson Insurance Company dated July 27th, 2007, and has not since been revoked, amended or modified:

"RESOLVED, that the President, the Executive Vice Presidents, the Senior Vice Presidents and the Vice Presidents shall have the authority and discretion, to appoint such agent or agents, or attorney or attorneys-in-fact, for the purpose of carrying on this Company's surety business, and to empower such agent or agents, or attorney or attorneys-in-fact, to execute and deliver, under this Company's seal or otherwise, bonds obligations, and recognizances, whether made by this Company as surety thereon or otherwise, indemnity contracts, contracts and certificates, and any and all other contracts and undertakings made in the course of this Company's surety business, and renewals, extensions, agreements, waivers, consents or stipulations regarding undertakings so made; and

FURTHER RESOLVED, that the signature of any such Officer of the Company and the Company's seal may be affixed by facsimile to any power of attorney or certification given for the execution of any bond, undertaking, recognizance, contract of indemnity or other written obligation in the nature thereof or related thereto, such signature and seal when so used whether heretofore or hereafter, being hereby adopted by the Company as the original signature of such officer and the original seal of the Company, to be valid and binding upon the Company with the same force and effect as though manually affixed."

THAT the above and foregoing is a full, true and correct copy of Power of Attorney issued by said Company, and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked, and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney is now in force.

Witness the hand of the undersigned and the seal of said Corporation this _____[th] day of  JUL 2 3 2012 , 20 ____.

(Corporate seal)

By...........................................
Peter H. Lovell
Corporate Secretary

G:\law NEW\Hudson\DSA\Powers of Attorney\PERF FORMS\PerfA.10 ALNT 7.2010.doc

Premium: $6,689.00
PREMIUM IS FOR CONTRACT TERM AND SUBJECT
TO ADJUSTMENT BASED ON FINAL CONTRACT PRICE.

Issued in Three (3) Original Counterparts.

Bond No.   AIS115

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## Performance Bond

**CONTRACTOR:**
*(Name, legal status and address)*

America West Landscape, Inc.
15086 La Palma Drive
Chino, CA  91710

**SURETY:**
*(Name, legal status and principal place of business)*

Hudson Insurance Company
100 William Street, 5th Floor
New York, NY  10038
**Mailing Address for Notices**

100 William Street, 5th Floor
New York, NY  10038

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*

Anaheim Union High School District
501 N. Crescent Way
Anaheim, CA  92801

**CONSTRUCTION CONTRACT**
Date:   July 13, 2012

Amount: $ 379,235.05          Three Hundred Seventy Nine Thousand Two Hundred Thirty Five Dollars and 05/100

Description:
*(Name and location)*
Bid 2012-16 Loara HS Security Fence & Landscape Improvements

**BOND**
Date:   July 23, 2012
*(Not earlier than Construction Contract Date)*

Amount: $379,235.05          Three Hundred Seventy Nine Thousand Two Hundred Thirty Five Dollars and 05/100

Modifications to this Bond:     ☒ None          ☐ See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:                    *(Corporate Seal)*

America West Landscape, Inc.

Signature: _____
Name
and Title:  Roy Anthony
            Vice President

**SURETY**
Company:                    *(Corporate Seal)*

Hudson Insurance Company

Signature: _____
Name
and Title:  Sarah Myers
            Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Alliant Insurance Services, Inc.
701 B Street 6th Floor
San Diego, CA  92101
619-238-1828

S-1852/AS 8/10

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1   the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2   the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3   the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1   After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2   Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

.1      the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
.2      additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and
.3      liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 14 Definitions
§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 16 Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |

Signature: _____

Name and Title:

Address

Signature: _____

Name and Title:

Address

S-1852/AS 8/10

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of  San Bernardino                                          }

On  _____7/24/2012_____ before me, _Michael Bribiesca Jr._____, Notary Public,
         Date                                    Insert Name of Notary exactly as it appears on the official seal

personally appeared  _Roy Anthony_____
                                    Name(s) of Signer(s)

_____

**MICHAEL BRIBIESCA JR.**
Commission No. 1935859
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires MAY 9, 2015

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____
                    Signature of Notary Public

Place Notary Seal Above

---

## ═ OPTIONAL ═

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Individual
☐ Corporate Officer ── Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

_____

Signer is Representing:
_____
_____
_____

RIGHT THUMBPRINT OF SIGNER

Top of thumb here

Signer's Name: _____

☐ Individual
☐ Corporate Officer ── Title(s): _____
☐ Partner  ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

_____

Signer is Representing:
_____
_____
_____

RIGHT THUMBPRINT OF SIGNER

Top of thumb here

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of  San Diego _____ }

On  JUL 2 3 2012  before me,  Jennifer L. Cox _____ , Notary Public,
Date                          Insert Name of Notary exactly as it appears on the official seal

personally appeared  Sarah Myers _____
                                         Name(s) of Signer(s)
_____ ,

JENNIFER L. COX
Commission # 1915197
Notary Public - California
San Diego County
My Comm. Expires Dec 4, 2014

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____
                Signature of Notary Public    Jennifer L. Cox

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of the  form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____     Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer —Title(s): _____
- ☐ Partner   ☐ Limited ☐ General
- ☑ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

_____
Signer is Representing:
_____
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer —Title(s): _____
- ☐ Partner   ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

_____
Signer is Representing:
_____
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here



No. ALNT-10-0356

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That HUDSON INSURANCE COMPANY, a corporation of the State of Delaware, with offices at 17 State Street, New York, New York, 10004, has made, constituted and appointed, and by these presents, does make, constitute and appoint

**Lawrence F. McMahon, James Baldassare, Jr. and Sarah Myers,**
each of the State of California

its true and lawful Attorney(s)-in-Fact, at New York, New York, each of them alone to have full power to act without the other or others, to make, execute and deliver on its behalf, as Surety, bonds and undertakings given for any and all purposes, also to execute and deliver on its behalf as aforesaid renewals, extensions, agreements, waivers, consents or stipulations relating to such bonds or undertakings provided, however, that no single bond or undertaking shall obligate said Company for any portion of the penal sum thereof in excess of the sum of Ten Million Dollars ($10,000,000.00).

Such bonds and undertakings when duly executed by said Attorney(s)-in-Fact, shall be binding upon said Company as fully and to the same extent as if signed by the President of said Company under its corporate seal attested by its Secretary.

In Witness Whereof, HUDSON INSURANCE COMPANY has caused these presents to be of its Executive Vice President thereunto duly authorized, on this 19th day of July, 2010 at New York, New York.

(Corporate seal)

Attest...........................

Peter H. Lovell
Corporate Secretary

**HUDSON INSURANCE COMPANY**

By...........................

Christopher T. Suarez
Executive Vice President

STATE OF NEW YORK
COUNTY OF NEW YORK.          SS.

On the 19th day of July, 2010 before me personally came Christopher T. Suarez to me known, who being by me duly sworn did depose and say that he is an Executive Vice President of HUDSON INSURANCE COMPANY, the corporation described herein and which executed the above instrument, that he knows the seal of said Corporation, that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said Corporation, and that he signed his name thereto by like order.

(Notarial Seal)

...........................

ALICIA T. McKINNEY
Notary Public, State of New York
No. 01MC6212495
Qualified in New York County
Commission Expires October 13, 2013

## CERTIFICATION

STATE OF NEW YORK
COUNTY OF NEW YORK

The undersigned Peter H. Lovell hereby certifies:

That the original resolution, of which the following is a true and correct copy, was duly adopted by unanimous written consent of the Board of Directors of Hudson Insurance Company dated July 27th, 2007, and has not since been revoked, amended or modified:

"RESOLVED, that the President, the Executive Vice Presidents, the Senior Vice Presidents and the Vice Presidents shall have the authority and discretion, to appoint such agent or agents, or attorney or attorneys-in-fact, for the purpose of carrying on this Company's surety business, and to empower such agent or agents, or attorney or attorneys-in-fact, to execute and deliver, under this Company's seal or otherwise, bonds obligations, and recognizances, whether made by this Company as surety thereon or otherwise, indemnity contracts, contracts and certificates, and any and all other contracts and undertakings made in the course of this Company's surety business, and renewals, extensions, agreements, waivers, consents or stipulations regarding undertakings so made; and

FURTHER RESOLVED, that the signature of any such Officer of the Company and the Company's seal may be affixed by facsimile to any power of attorney or certification given for the execution of any bond, undertaking, recognizance, contract of indemnity or other written obligation in the nature thereof or related thereto, such signature and seal when so used whether heretofore or hereafter, being hereby adopted by the Company as the original signature of such officer and the original seal of the Company, to be valid and binding upon the Company with the same force and effect as though manually affixed."

THAT the above and foregoing is a full, true and correct copy of Power of Attorney issued by said Company, and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked, and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney is now in force.

Witness the hand of the undersigned and the seal of said Corporation this _____th day of **JUL 2 3 2012** , 20_____.

(Corporate seal)

By...........................

Peter H. Lovell
Corporate Secretary

G:\law NEW\Hudson\DSA\Powers of Attorney\PERF FORMS\PerfA.10 ALNT 7.2010.doc

# EXHIBIT C

WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
ATTORNEYS AT LAW

2040 Main Street
Suite 300
Irvine, California 92614

Telephone: 949-852-6700
Facsimile: 949-261-0771
www.wthf.com

November 19, 2012

**VIA U.S. FIRST CLASS MAIL**

America West Landscape, Inc.
15086 La Palma Drive
Chino, California 91710

Duane Groen
16381 Bluegrass Lane
Chino Hills, California 91709

Marguerite Groen
16381 Bluegrass Lane
Chino Hills, California 91709

Roy Anthony
2477 Limestone Court
Chino Hills, California 91709

Michelle Anthony
2477 Limestone Court
Chino Hills, California 91709

Re:   *Indemnity and Collateral Demand*
Principal:    America West Landscape, Inc.
Bond No:     AIS115
Surety:      Hudson Insurance Company
Project:     Bid 2012-16 Loara HS Security Fence & Landscape Improvements
Client/Matter:  103544-2

Dear Indemnitors:

As you are aware, Hudson Insurance Company ("Hudson") is surety for America West Landscape, Inc. ("America West") in connection with payment and performance bond no. AIS115 ("Bond"), issued in connection with the project known as Bid 2012-16 Loara HS Security Fence & Landscape Improvements ("Project"). As you are also aware, America West defaulted on the Project, causing Hudson to incur liability on the Bond.

As a condition precedent to Hudson becoming surety for America West, Hudson required America West, Duane Groen, Marguerite Goren, Roy Anthony, and Michelle Anthony (collectively, the "Indemnitors") to execute a General Indemnity Agreement ("GIA") in Hudson's favor, a copy of which is enclosed for your reference.

Pursuant to the GIA, the Indemnitors agreed to, among other things, jointly and severally indemnify Hudson for all losses and expenses which Hudson has incurred or may incur as a result of having issued the Bond on behalf of America West. Specifically, the GIA provides in relevant part, that Indemnitors agree to pay on demand:

America West Landscape, Inc.
Duane & Marguerite Groan
Roy & Michelle Anthony
November 19, 2012
Page 2

All loss, costs and expenses of whatsoever kind of nature, including, but not limited to: court costs and the cost of services rendered by attorneys . . . , investigators, accountants, engineers, or other consultants, and any other losses, costs or expenses incurred by [Hudson] by reason of having executed any Bond, or incurred by it on account of any Default under this Agreement by any of the Undersigned, or by reason of the refusal to execute any bond.  In addition, the Undersigned agree to pay to [Hudson] interest on all disbursements made by [Hudson] in connection with such loss, costs and expenses incurred by [Hudson] at the maximum rate permitted by law, calculated from the date of each disbursement.

Additionally, on Page 2 of the GIA, the Indemnitors agreed to grant Hudson the right to require the Indemnitors to post collateral to cover Hudson's exposure on the Bond.  Specifically, the GIA provides, in relevant part, that Indemnitors agree to pay on demand:

An amount sufficient to discharge any claim made against [Hudson] on any Bond, whether [Hudson] will have made any payment or established any reserve therefore.  Such payment to be in the amount deemed necessary by [Hudson] to protect it from any loss, cost or expense.  This sum may be used by [Hudson] to pay such claim or be held by [Hudson] as collateral security against loss, cost or expense on any Bond. . . .

To date, Hudson has received four payment bond claims on the Project.  As of November 19, 2012, these claims total $30,549.41.  Based on Hudson's impending losses, as well as your indemnification and collateralization obligations under the GIA, Hudson hereby makes demand on you, and each of you, jointly and severally, as follows:

1.      That you reimburse Hudson for all losses, including attorneys' fees, costs and expenses that Hudson has incurred and will incur as a result of having issued the Bond, which amount currently totals $2,420.00, and is expected to increase; and

2.      That you furnish collateral in the sum of $30,549.41.

If, by the close of business on December 3, 2012, this office does not receive a total of $32,969.41 (the sum of the collateral demanded and the costs and fees incurred by Hudson thus far) from the Indemnitors, representing the Indemnitors' obligations to indemnify and post collateral security with Hudson, Hudson will pursue any actions necessary to enforce its rights under the GIA.  Such actions include, but are not limited to, filing suit against the Indemnitors.  Should Hudson file suit against the Indemnitors, Hudson would be entitled to recover, in addition to its losses and the collateral security noted above, all attorneys' fees, costs and expenses related to the prosecution of that action.

America West Landscape, Inc.
Duane & Marguerite Groan
Roy & Michelle Anthony
November 19, 2012
Page 3

    Hudson reserves the right to supplement this demand to require additional payment and/or collateral should it be deemed necessary.  Nothing stated in this letter is to be construed as a waiver of any right available to Hudson, at law or in equity.  This reservation of rights shall remain in full force and effect unless expressly revoked in writing.

    We greatly appreciate your assistance and cooperation in this matter.  If you have any questions or wish to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**

Kaysie Garcia

KG

IRVINE 181460.1 103544.00002

# EXHIBIT D

# WATT, TIEDER, HOFFAR
## & FITZGERALD, L.L.P.
### ATTORNEYS AT LAW

2040 Main Street
Suite 300
Irvine, California 92614

Telephone: 949-852-6700
Facsimile: 949-261-0771
www.wthf.com

December 11, 2012

**VIA U.S. FIRST CLASS MAIL**

America West Landscape, Inc.
15086 La Palma Drive
Chino, California 91710

Duane Groen
16381 Bluegrass Lane
Chino Hills, California 91709

Marguerite Groen
16381 Bluegrass Lane
Chino Hills, California 91709

Roy Anthony
2477 Limestone Court
Chino Hills, California 91709

Michelle Anthony
2477 Limestone Court
Chino Hills, California 91709

Re:  *Second Indemnity and Collateral Demand*
     Principal:  America West Landscape, Inc.
     Bond No:  AIS115
     Surety:  Hudson Insurance Company
     Project:  Bid 2012-16 Loara HS Security Fence & Landscape Improvements
     Client/Matter:  103544-2

Dear Indemnitors:

     This firm represents Hudson Insurance Company ("Hudson"). As you are aware, Hudson is surety for America West Landscape, Inc. ("America West") in connection with payment and performance bond no. AIS115 ("Bond"), issued in connection with the project known as Bid 2012-16 Loara HS Security Fence & Landscape Improvements ("Project"). As you are also aware, America West defaulted on the Project, causing Hudson to incur liability on the Bond.

     As a condition precedent to Hudson becoming surety for America West, Hudson required America West, Duane Groen, Marguerite Goren, Roy Anthony, and Michelle Anthony (collectively, the "Indemnitors") to execute a General Indemnity Agreement ("GIA") in Hudson's favor, a copy of which is enclosed for your reference.

     Pursuant to the GIA, the Indemnitors agreed to, among other things, jointly and severally indemnify Hudson for all losses and expenses which Hudson has incurred or may incur as a result of having issued the Bond on behalf of America West. Specifically, the GIA provides in relevant part, that Indemnitors agree to pay on demand:

December 11, 2012
Page 2

All loss, costs and expenses of whatsoever kind of nature, including, but not limited to: court costs and the cost of services rendered by attorneys . . . , investigators, accountants, engineers, or other consultants, and any other losses, costs or expenses incurred by [Hudson] by reason of having executed any Bond, or incurred by it on account of any Default under this Agreement by any of the Undersigned, or by reason of the refusal to execute any bond.  In addition, the Undersigned agree to pay to [Hudson] interest on all disbursements made by [Hudson] in connection with such loss, costs and expenses incurred by [Hudson] at the maximum rate permitted by law, calculated from the date of each disbursement.

Additionally, on Page 2 of the GIA, the Indemnitors agreed to grant Hudson the right to require the Indemnitors to post collateral to cover Hudson's exposure on the Bond.  Specifically, the GIA provides, in relevant part, that Indemnitors agree to pay on demand:

An amount sufficient to discharge any claim made against [Hudson] on any Bond, whether [Hudson] will have made any payment or established any reserve therefore.  Such payment to be in the amount deemed necessary by [Hudson] to protect it from any loss, cost or expense.  This sum may be used by [Hudson] to pay such claim or be held by [Hudson] as collateral security against loss, cost or expense on any Bond. . . .

As of December 11, 2012, Hudson has received six payment bond claims on the Project, totaling $41,162.57.  In addition, Hudson is expected to incur $32,264.95 in losses under the performance bond.  Based on Hudson's impending losses, as well as your indemnification and collateralization obligations under the GIA, Hudson hereby makes demand on you, and each of you, jointly and severally, as follows:

1.      That you reimburse Hudson for all losses, including attorneys' fees, costs and expenses that Hudson has incurred and will incur as a result of having issued the Bond, which amount currently totals $6,885.00, and is expected to increase; and

2.      That you furnish collateral in the sum of $73,427.52.

If, by the close of business on **December 21, 2012**, this office does not receive a total of **$80,312.52** (the sum of the collateral demanded and the costs and fees incurred by Hudson thus far) from the Indemnitors, representing the Indemnitors' obligations to indemnify and post collateral security with Hudson, Hudson will immediately pursue any actions necessary to enforce its rights under the GIA.  Such actions include, but are not limited to, filing suit against the Indemnitors.  If no response to this letter is received by December 21, 2012, Hudson will file a lawsuit against Indemnitors on December 26, 2012.  Should Hudson file suit against the Indemnitors, Hudson would be entitled to recover, in addition to its losses and the collateral security noted above, all attorneys' fees, costs and expenses related to the prosecution of that action.

December 11, 2012
Page 3

Hudson reserves the right to demand additional collateral from Indemnitors.  Hudson also reserves the right to supplement this demand to require additional payment and/or collateral in any other situation should it become necessary.  Nothing stated in this letter is to be construed as a waiver of any right available to Hudson, at law or in equity.  This reservation of rights shall remain in full force and effect unless expressly revoked in writing.

We greatly appreciate your assistance and cooperation in this matter.  If you have any questions or wish to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**

Kaysie Garcia

KDG/ben

cc:    Greg Arnold, Hudson Insurance Company

IRVINE 182026.1 103544.00002

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV12- 10939 PA (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| **Western Division** | **Southern Division** | **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Robert C. Niesley, Esq. (SBN 131373)
Kaysie D. Garica, Esq. (SBN 271329)
Watt, Tieder, Hoffar & Fitzgerald, LLP
2040 Main Street, Suite 300
Irvine, CA 92614

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| HUDSON INSURANCE COMPANY | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV12-10939** PA(VBKX) |
| v. | |
| AMERICA WEST LANDSCAPE, INC., a California corporation; DUANE GROEN, an individual; ROY ANTHONY, AKA ROY BREBIESCA, an individual; MARGUERITE GROEN, AKA MARGUERITE NEWHOUSE, an individual; MICHELLE ANTHONY, AKA MICHELLE NEWHOUSE, an individual,   DEFENDANT(S). | **SUMMONS** |

TO:  DEFENDANT(S):

A lawsuit has been filed against you.

Within 21 ____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [ x ] complaint [_____ ] amended complaint [___]counterclaim[___]cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Kaysie D. Garcia, Esq. _____ , whose address is 2040 Main Street, Suite 300, Irvine, CA 92614 _____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**JULIE PRADO**

Dated: December 26, 2012 _____        By: _____
                                                Deputy Clerk

                                                *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (10/11                          SUMMONS

                                                                    CCD-1A

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐ )

HUDSON INSURANCE COMPANY

**DEFENDANTS**

AMERICA WEST LANDSCAPE, INC., a California corporation; DUANE GROEN, an individual; ROY ANTHONY, AKA ROY BRIBIESCA, an individual; MARGUERITE GROEN, AKA MARGUERITE NEWHOUSE, an individual; MICHELLE ANTHONY, AKA MICHELLE NEWHOUSE, an individual,

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Robert C. Niesley, Esq. (SBN 131373)
Kaysie D. Garica, Esq. (SBN 271329)
Watt, Tieder, Hoffar & Fitzgerald, LLP
2040 Main Street, Suite 300
Irvine, CA 92614
(949) 852-6700

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No        ☐ **MONEY DEMANDED IN COMPLAINT:** $ Exceeds $93,241.57

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

18 USC 1332- Breach of Contract; Statutory Indemnity; Declaratory Relief; Quia Timet; and Specific Performance

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | **IMMIGRATION** | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV12- 10939

**FOR OFFICE USE ONLY:**   Case Number:

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)        CIVIL COVER SHEET        Page 1 of 2
        CCD-JS44

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York, Delaware |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County<br>Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Kayou garcia_     Date _12/26/12_

     **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |